IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 12-cv-00009-CMA-KMT

FUSION SPECIALTIES, INC.,

      Plaintiff,

v.

CHINA NETWORK LEADER, INC., a California corporation,
d/b/a CNL Mannequins,

      Defendant.

---

## ORDER GRANTING STAY OF PROCEEDINGS PENDING *EX PARTE* REEXAMINATION OF PATENT-IN-SUIT

---

This matter is before the Court on Defendant China Network Leader, Inc.'s

Motion to Stay Proceedings Pending *Ex Parte* Reexamination of Patent-In-Suit, filed

on April 2, 2012. (Doc. # 12.) Defendant seeks relief in two forms: (1) a stay of all

proceedings; and (2) administrative closure of the case "pending the outcome of

[Defendant's] request for *ex parte* reexamination of the '794 Patent." (Doc. # 12 at 10.)

### I. BACKGROUND

This is a patent infringement case between two competing mannequin

manufacturers. Pursuant to Plaintiff Fusion Specialties, Inc.'s Amended Complaint,

Plaintiff alleges that Defendant "is infringing, contributing to the infringement and/or

inducing the infringement of Claim 37 of the '794 Patent."[1] (Doc. # 51, ¶ 9.)  On June

25, 2012, the United States Patent and Trademark Office (the "PTO") granted

Defendant's request for reexamination of the '794 Patent.[2]

In 2008, three years prior to the initiation of the instant case, Plaintiff Fusion

Specialties, Inc. filed a lawsuit in this district (Case No. 08-cv-00001), alleging that

Defendant infringed the '794 Patent.[3]  (Doc. # 21 at 2.)  Before any formal discovery had

been conducted or any substantive litigation had occurred, the parties entered into a

settlement agreement on April 10, 2008.  (Doc. # 22.)  The settlement agreement

provides, in relevant part, that "[Defendant] hereby stipulates and agrees" that the

'794 Patent is "valid and enforceable."[4]  (*Id.*, ¶ 2.)  After Defendant requested

reexamination of the '794 Patent to the PTO, Plaintiff was permitted to amend its

complaint to add a breach of settlement agreement claim.  (Doc. # 50.)

Plaintiff filed its response to the instant motion on May 4, 2012, and Defendant

replied on May 21, 2012.  (Doc. ## 21, 31.)

---

1 Claim 37 of the '794 Patent involves the concept of using magnetic joints in mannequins with a "depth-of-pull of at least 200 gauss at a distance of one inch." (Doc. # 1-1 at 15.)

2 When Defendant filed the instant motion, the PTO had not acted upon Defendant's request for reexamination.  However, on June 27, 2012, Defendant notified the Court that the PTO had granted Defendant's request for reexamination of the '794 Patent.  (Doc. # 47.)

3  In that case, Plaintiff also alleged that Defendant infringed U.S. Patent 7,144,179 (the "'179 Patent").  The '179 Patent is not at issue in this case.

4 Defendant further agreed to "forever release and discharge [Plaintiff] from any and all actions, causes of actions . . . of any kind whatsoever through the Effective Date in law, equity or other-wise, . . . which were brought in or are related to the Patents or the Litigation." (Doc. # 22, ¶ 5(b).)

## II. **LEGAL STANDARD**

A "motion to stay an action pending the resolution of a reexamination proceeding in the United States Patent and Trademark Office is directed to the sound discretion of the court." *Broadcast Innovation, L.L.C. v. Charter Commc'n, Inc.*, No. 03-cv-2223, 2006 WL 1897165, at * 4 (D. Colo. July 11, 2006) (unpublished) (citation omitted). Generally, "there exists a liberal policy in favor of granting motions to stay proceedings pending the outcome of reexamination proceedings." *Id.* This liberal policy stems from the increased efficiency of resolving patent disputes through claim reexamination by the PTO. *Id.* at *3; *Canady v. Erbe Elektromedizin GmbH*, 271 F. Supp. 2d 64, 78 (D.D.C. 2002) ("Congress instituted the reexamination process to shift the burden or reexamination of patent validity from the courts to the PTO. Patent validity is a commonly asserted defense in litigation and courts are cognizant of Congress's intention of utilizing the PTO's specialized expertise to reduce costly and timely litigation.") (internal citations omitted).

The PTO's decision upon reexamination of a challenged patent can have a dispositive effect on a patent infringement claim. Notably, a "PTO decision to cancel a patent renders the patent unenforceable in pending litigation." *eSoft, Inc. v. Blue Coat Sys., Inc.*, 505 F. Supp. 2d 784, 786 (D. Colo. 2007) (citing *Broadcast Innovation*, 2006 WL 1897165, at *4). Although not binding on a court, a PTO decision to uphold the validity of the reexamined patent "is strong evidence that the a district court must consider in assessing whether the party asserting invalidity has met its burden with clear and convincing evidence." *Id.*

3

In evaluating a motion to stay pending reexamination, the Court considers:

(1) whether a stay will simplify the issues in question and streamline the trial; (2) whether discovery is complete and whether a trial date is set; (3) whether a stay would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party; and (4) whether a stay will reduce the burden of litigation on the parties and on the court.

eSoft, 505 F. Supp. 2d at 787 (D. Colo. 2007) (citing Broadcast Innovation, 2006 WL 1897165, at *4). Courts often collapse the first and fourth factors. Id. None of these factors is controlling; rather, courts determine whether a stay is appropriate based on the totality of the circumstances. Broadcast Innovation, 2006 WL 1897165, at * 4.

## A.   FACTORS ONE AND FOUR: SIMPLIFICATION OF ISSUES

The Court finds that a stay is likely to simplify the issues in question and reduce the burden of litigation on both the parties and this Court. The PTO's ex parte reexamination statistics show that the PTO has changed at least some of the claims analyzed in 77% of patent reexaminations and cancelled all claims in 11% of reexaminations. (Doc. # 12-2 at 3.) Thus, there is a high statistical likelihood that reexamination of the '794 Patent will leave Plaintiff without a valid infringement claim or a significantly modified one. Alternatively, if the PTO upholds the validity of the Patent upon reexamination, the parties and the Court will benefit from the PTO's expert analysis of a complex issue. See eSoft, 505 F. Supp. 2d at 787 (noting that "the specialized expertise the PTO can bring to bear on the question whether prior art undermines the validity of the patent's claims would unquestionably help this court resolve [p]laintiff's case expeditiously, efficiently, and - most importantly - correctly."); Broadcast Innovation, 2006 WL 1897165, at * 4 ("Congress instituted the reexamination

4

process to shift the burden or reexamination of patent validity from the courts to the

PTO."). Given the likelihood that reexamination will, at minimum, modify Plaintiff's

infringement claim, a stay will also save the parties from needlessly wasting their

resources in litigating issues that will ultimately be rendered moot by the PTO's findings.

See id. at *10.

Plaintiff argues that a stay will not simplify the issues because the decision of the

PTO will not resolve Plaintiff's breach of settlement agreement claim.[5] (Doc. # 21 at 7.)

However, the breach of settlement agreement claim was added only after the initiation

of this lawsuit, and appears ancillary to the patent infringement claim. Moreover, for

reasons discussed below in Section D, the Court finds that Plaintiff is unlikely to

ultimately prevail on its breach of settlement agreement claim. Thus, although the Court

agrees with Plaintiff that the decision of the PTO will not affect disposition of its breach

of settlement agreement claim, the first and fourth factors nevertheless weigh strongly

in favor of granting a stay.

## B.    FACTOR TWO: COMPLETION OF DISCOVERY AND TRIAL SETTING

It is not disputed that this litigation is in its early stages. The current deadline for

the close of discovery is not until March 8, 2013 (Doc. # 38), and trial has not been set.

Thus, the second factor also weighs strongly in favor of a stay. See, e.g., Tru-Balance,

LLC v. Alcoa, Inc., No. 11-cv-01127, 2012 WL 619114, at *1 (D. Colo. Feb. 27, 2012)

(unpublished) (finding that the second factor weighs in favor a stay where "[d]iscovery

---

5 Plaintiff cites several cases where courts have denied motions to stay because the plaintiff
had brought numerous claims against an accused infringer, some of which would not be
resolved by a pending PTO reexamination. However, these cases are all distinguishable
from the instant case on their facts.

is not completed and no trial date has been set."); *Ho Keung Tse v. Apple Inc.*, No. 06-06573, 2007 WL 2904279, at *2 (N.D. Cal. Oct. 4, 2007) (unpublished) ("A stay is particularly appropriate for cases in the initial stages of litigation or in which there has been little discovery.").

Although Plaintiff acknowledges that the second factor "would usually weigh in favor of a stay," Plaintiff contends that the second factor weighs against a stay because of the parties' prior litigation. For this proposition, Plaintiff relies on *Power Integrations Inc. v. Fairchild Semiconductor International, Inc.*, No. 08-309, 2008 WL 5335400, at *2 (D. Del. Dec. 19, 2008) (unpublished). In that case, the court denied a motion to stay "largely because of the length and extensive history of litigation" between the parties. *Id.* Specifically, the parties had previously spent approximately four years litigating many of the same claims, and at least some of the claims had resulted in jury verdicts in the plaintiff's favor. *Id.* In marked contrast to *Powers Integration*, the prior litigation between Plaintiff and Defendant resulted in a settlement agreement before any discovery was conducted or the court had issued any substantive orders. (*See* Case No. 08-cv-00001.) Thus, the previous lawsuit between the parties does not change the fact that the instant case is still in its nascent stages.

## C.    FACTOR THREE: UNDUE PREJUDICE TO PLAINTIFF

The Court next considers whether granting a stay will unduly prejudice Plaintiff or present a clear tactical advantage for Defendant. Plaintiff offers a number of reasons as to why it will suffer prejudice if a stay is granted.

First, Plaintiff points out that it seeks not only monetary damages, but also a permanent injunction. As Plaintiff notes, the grant of a stay could delay the issuance of an injunction. During this period, Plaintiff asserts that Defendant will attempt to usurp Plaintiff's market share, resulting in difficult to measure losses. This argument is speculative at best. The Supreme Court has held that a plaintiff seeking a permanent injunction under the Patent Act must satisfy a four-factor test before a court may grant such relief. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391-92 (2006). To receive a permanent injunction, Plaintiff must show that:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Id.* at 391. Plaintiff has not made any showing that it would satisfy this four-factor test,[6] and the Court is unaware of any categorical rule providing that a plaintiff always suffers prejudice by virtue of requesting injunctive relief in addition to monetary damages.

Next, Plaintiff contends that it will suffer prejudice because the parties are direct competitors in the marketplace. As Plaintiff asserts, "[c]ourts have recognized that where the parties are direct competitors a stay would likely prejudice the non-movant."

---

6 This is not to say that Plaintiff may not ultimately receive a permanent injunction. Citing to *eBay*, Defendant contends that Plaintiff cannot obtain injunctive relief as a result of its licensing of the '794 Patent. This is a blatant mischaracterization of *eBay*. In *eBay*, the Supreme Court rejected a categorical rule that licensors of patents could not obtain permanent injunctions. *Id.* at 393. Rather, the Supreme Court found that some patent holders "might reasonably prefer to license their patents" and that "[s]uch patent holders may be able to satisfy the traditional four-factor test." *Id.*

*Nidec Corp. v. LG Innotek Co., Ltd.*, No. 6:07cv108, 2009 WL 3673433, at *4 (E.D. Tex. Apr. 3, 2009) (unpublished); *Tesco Corp. v. Weatherford Int'l, Inc.*, 599 F. Supp. 2d 848, 851 (S.D. Tex. 2009) (listing cases).  Although Plaintiff may suffer some prejudice as a result of a stay, the Court finds that any such prejudice appears minimal in light of the particular circumstances of this case.  After the parties reached settlement in the previous lawsuit, the parties entered into a license agreement whereby Defendant was permitted to continue selling mannequins incorporating Plaintiff's patents.  (Doc. # 31-1, ¶ 3.)  This undermines Plaintiff's argument that it would suffer irreparable harm if Defendant infringes Plaintiff's '794 Patent during the course of a stay because the parties were previously able to value the patents via the licensing agreement.[7]  Furthermore, a representative of Defendant attests that representatives of Plaintiff inspected Defendant's mannequins in 2010 and said that the mannequins did not infringe the '794 Patent.  (Doc. # 31-1, ¶¶ 4-5.)  Thus, Plaintiff has known of Defendant's allegedly infringing activity for over a year before commencing the instant suit in January of 2012.  (Doc. # 1.)  Plaintiff's apparent delay in bringing this lawsuit casts doubt on its claim that it will suffer irreparable harm if a stay issues.

Plaintiff also contends that it would "lose the opportunity to identify and depose key witnesses . . . or to obtain important documents and other information."  (Doc. # 21 at 10.)  As Defendants observe, this argument is purely speculative.  Plaintiff provides no explanation as to why any information will be lost during a stay.  *See Cameras Onsite, LLC v. Digital Mgmt. Solutions, Inc.*, No. H-09-2518, 2010 WL 1268054, at *3

---

7  Should Plaintiff ultimately prevails on its infringement claim, any infringement by Defendant during the course of stay may compound Plaintiff's monetary damages.

(S.D. Tex. Mar. 24, 2010) ("[m]ere delay, without more . . . does not demonstrate undue prejudice.").

Given the parties' status as direct market competitors, Plaintiff may suffer prejudice as a result of a stay. However, upon consideration of the particular circum-stances of this case, the risk of such prejudice appears minimal. Thus, this factor weighs only slightly against a stay.

## D.    OTHER CONSIDERATIONS

Finally, Plaintiff argues that a stay should not issue because Defendant is estopped from challenging the '794 Patent through the reexamination process. Plaintiff relies on the parties' settlement agreement, which provides that "[Defendant] hereby stipulates and agrees" that the '794 Patent is "valid and enforceable." (Doc. # 22, ¶ 2.) Although the Court need not resolve Plaintiff's breach of settlement agreement claim in this Order, the Court finds that Plaintiff's estoppel argument is not reason to deny a stay.

Both parties agree that a prior settlement agreement may bar a defendant from raising invalidity defenses in future litigation. *See Flex-Foot, Inc. v. CRP, Inc.*, 238 F.3d 1362, 1370 (Fed. Cir. 2001) (holding that defendant was contractually estopped from challenging the validity of a patent "[b]ased on the clear and ambiguous wavier of future challenges to the validity" of the patent). However, "any surrender of the right to challenge validity of a patent is construed narrowly." *Diversey Lever, Inc. v. Ecolab, Inc.*, 191 F.3d 1350, 1352 (Fed. Cir. 1999). Thus, although "invalidity and unenforce-ability claims may be released," courts will only find such defenses released, "if the

9

language of the agreement or consent decree is clear and unambiguous." *Baseload Energy, Inc. v. Roberts*, 619 F.3d 1357, 1362 (Fed. Cir. 2010).

The Court finds that the settlement agreement is not sufficiently clear and unambiguous to bar Defendant from challenging the validity of the '794 Patent. In *Flex-Foot*, the parties expressly agreed not to challenge the validity of the patent "in any future litigation, arbitration, or other proceeding." 238 F.3d at 1364. Based on that agreement, the *Flex-Foot* court concluded that the defendant was contractually estopped from asserting a claim of invalidity in the second litigation. *Id.* In contrast to the settlement agreement in *Flex-Foot*, Defendant agreed only that the '794 Patent was "valid and enforceable." (Doc. # 22, ¶ 2.) Greater clarity than this is needed to foreclose a validity defense in a later infringement suit involving a different product. *See Ecolab, Inc. v. Paraclipse, Inc.*, 285 F.3d 1362, 1377 (Fed. Cir. 2002) (holding that language in a consent judgment providing that "the '690 patent is a valid patent" was insufficient to preclude an invalidity defense); *Foster v. Hallco Mfg. Co. Inc.*, 947 F.2d 469, 482 (Fed. Cir. 1991) (holding that language in a consent decree that the patents were "valid and enforceable in all respects" did not preclude an invalidity defense).

Thus, the Court finds that Defendant is not estopped from challenging the validity of the '794 Patent.

## III. **CONCLUSION**

Upon consideration of the four factors, the Court finds that although Plaintiff may suffer prejudice as a result of a stay, the risk of such prejudice is minimal and may be

compensated by monetary damages.  Given that the other three factors weigh strongly in favor a stay, the Court concludes that a stay should issue.

Accordingly, it is ORDERED that Defendant's Motion to Stay Proceedings Pending *Ex Parte* Reexamination of Patent-In-Suit (Doc. # 12) is GRANTED.

It is FURTHER ORDERED THAT this case be ADMINISTRATIVELY CLOSED, subject to reopening for good cause, or by a filing by either party reporting the results of the reexamination.

DATED:  August __11__, 2012

BY THE COURT:

CHRISTINE M. ARGUELLO
United States District Judge

11